UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DONALD P. ROSENDALE,

                         **Plaintiff,**

                    *- against -*

**THOMAS LEJEUNE,** *as Amenia, N.Y. town supervisor*, **DONALD SMITH,** *as Amenia, N.Y. Zoning Code Enforcement Office,* **THE TOWN OF AMENIA**, New York, and **TAMARACK PRESERVE, LTD.,**

                        **Defendants.**

03 Civ. 6181   (CLB)(LMS)

**REPORT AND RECOMMENDATION**

**TO: THE HONORABLE CHARLES L. BRIEANT, U.S. DISTRICT JUDGE**

Pro se Plaintiff Donald P. Rosendale brings this civil rights action pursuant to 42 U.S.C. § 1983 and New York state law against the Town of Amenia, (the "Town"), Thomas LeJeune ("LeJeune"), Donald Smith ("Smith"), and Tamarack Preserve, Ltd. ("Tamarack")[1] (collectively the "Defendants"), alleging, inter alia, that the Defendants' actions violated his constitutional rights under the First and Fourteenth Amendments.  The Defendants now move for summary judgment to dismiss Plaintiff's claims in their entirety, arguing that the instant case is barred by res judicata, as well as the applicable statute of limitations.  In the alternative, the Defendants argue that: (1) Plaintiff has failed to state a claim of First Amendment retaliation; (2) LeJeune and Smith, in their individual capacities, are entitled to qualified immunity; and (3) Plaintiff failed to state a Monell claim against the Town.

---

[1] Plaintiff's claims against Tamarack were dismissed without prejudice on November 21, 2003, by the Honorable Charles L Brieant.

1

I.  BACKGROUND

   A.   **Relevant Facts**[2]

Plaintiff resides in the Town of Amenia, where he owns 104 acres of property located adjacent to Tamarack. Plaintiff's First Amended Complaint (docket entry 6) (hereinafter "Complaint") at ¶¶ 6 and 52, n.4. Plaintiff purchased the property approximately twenty-three years ago, intending to use the property to breed horses. Plaintiff's Affidavit in Opposition to the Defendants' Motion for Summary Judgment ("Plaintiff.Aff.") at ¶ 3. On November 30, 1990, Tamarack submitted an application to the Town (hereinafter "ZBA") for a special use permit ("Special Use Permit") to establish a rod and gun club. See Rosendale v. Iuliano, 99 Civ. 11701 (DLC) 2002 WL 215656, at *1 (S.D.N.Y. Feb. 13, 2002); see also Exhibits in Support of Defendant's Motion for Summary Judgment ("Defendants' Exhibits") at Exhibit I. On December 21, 1990, the Town denied Tamarack's application because the Zoning Board of Appeals ("ZBA") had sole authority to issue special permits. Iuliano, 2002 WL 215656, at *1; Defendants' Exhibits at Exhibit J. The ZBA thereafter submitted the application to the Dutchess County Planning Department (the "Department") for review, and the Department issued a report recommending that Tamarack's application for the Special Use Permit be granted, subject to certain conditions. Iuliano, 2002 WL 215656, at *1. The ZBA discussed Tamarack's application at public hearings on May 9 and June 13, 1991, addressing the recommendations of the Department at both of these meetings. Id., at *2. At the end of the meeting on June 13, 1991, a motion was made to issue the Special Use Permit subject to certain conditions, and the

---

[2] The facts are taken from the pleadings and other submissions of the parties, as well as prior case law, and are viewed in the light most favorable to Plaintiff.

motion was unanimously granted. Id. Rosendale was present at the May 9 meeting but not at the June 13 meeting. Id. In February, 1991, Plaintiff began to lodge complaints about the noise caused by the Tamarack shooting range with the ZBA, Tamarack, Amenia Zoning Administrator Charles Beck, and the Dutchess County Sheriff's Office. Iuliano, 2002 WL 215656, at *3.

### B. Rosendale's Prior Lawsuit

On December 1, 1999, Plaintiff filed a lawsuit in this Court (the "District Court")against substantially the same Defendants named in the instant action (hereinafter "Rosendale I" or the "1999 lawsuit"),[3] for punitive and compensatory damages and a refund of property taxes on the ground that the Defendants' failure to enforce the conditions of the Special Use Permit caused his property to be taken without just compensation. Iuliano, 2002 WL 215656, at *3. In addition, Plaintiff claimed, inter alia, that the Defendants' actions denied him procedural due process, that the Tamarack shooting range constituted a public and private nuisance under New York state law and the New York Constitution (Id., at *4), and that the Defendants violated New York General Business Law § 7, which Plaintiff claims prohibits "professional contests disturbing the peace before 1:05 on the Sabbath." See Rosendale I, Second Amended Complaint at ¶ 7.

On May 8, 2000, Tamarack filed a motion to dismiss the 1999 lawsuit pursuant to Rule 12(b)(1) and 12(b)(6), and on May 11, 2000, Arlene Iuliano, Terry Binotto, and the Town

---

[3] Arlene Iuliano and Terry Binotto were named as individual defendants in Rosendale I, as they held the positions of Town Supervisor and Town Zoning Code Enforcement Officer, respectively, in 1999. They were also originally named in the 2003 lawsuit but have been dismissed from the case.

(collectively referred to as the "Municipal Defendants") filed a motion for judgment on the pleadings pursuant to 12(c). Id., at * 3. On January 17, 2001, the District Court denied the Defendants' respective motions, finding that Rosendale I was not barred by the three-year statute of limitations applicable claims brought under § 1983 because Plaintiff's claims were based on the existence of a continuing nuisance.[4] Id. Thereafter, Tamarack moved for summary judgment on June 2, 2001, and the Municipal Defendants moved for summary judgment on October 1, 2001. Id., at *4. The District Court granted the Defendants' motions in their entirety, finding that, inter alia, Plaintiff failed to establish that he had a protected property right in the enforcement of the Amenia zoning and building code, and in any event, Plaintiff could have pursued an Article 78 proceeding to challenge the Town's alleged violation of municipal law and failed to do so.[5] Id., at *5-6. Plaintiff appealed the District Court's decision to grant summary judgment (the "February 13 Opinion"), and the Court of Appeals affirmed the District Court's decision to grant the Defendants' summary judgment motions, citing essentially the same reasons stated by the District Court. See Rosendale v. Iuliano, 63 Fed.Appx. 52, 53 (2d Cir. 2003).

Additionally, Plaintiff filed a motion in the District Court pursuant to Fed. R. Civ. P. 60(b) for reconsideration of the District Court's February 13 Opinion. In his Rule 60(b) Motion, Plaintiff asserted that the District Court's February 13 Opinion should be vacated based on a new

---

[4] As will be discussed infra at Section II.B, Plaintiff cites to the District Court's ruling in Rosendale I with respect to the statute of limitations issue to support his argument that the claims in his 2003 lawsuit are also timely.

[5] In the instant action, Plaintiff concedes that he did not bring an Article 78 action with respect to his claims. See Plaintiff's First Amended Complaint at ¶¶ 8; 19; 65, n.6

4

legal theory newly discovered evidence. Rosendale v. Iuliano, 99 Civ. 11701 (DLC) 2002 WL 2131564, at *3 (S.D.N.Y. Sept. 4, 2002). Specifically, Plaintiff requested that he be allowed to bring a claim under the First Amendment based on a retaliation theory, claiming that certain of the Defendants' action were retaliatory measures taken against him due to his complaints regarding the noise levels of the shooting range at Tamarack. Id. The District Court denied Plaintiff's 60(b) Motion in its entirety, stating that "[a]n argument based on hindsight regarding how the movant would have preferred to have argued its case does not provide grounds for Rule 60(b) relief . . . nor does the failure to marshal all known facts in opposition to a summary judgment motion." Id., at *3 (quoting Paddington Partners v. Bouchard, 34 F.3d 1132, 1147 (2d Cir. 1994)). Plaintiff also appealed the District Court's decision to deny his Rule 60(b) Motion, and the Court of Appeals, again, affirmed the District Court's judgment. Specifically, the Second Circuit denied Plaintiff's request to file an amended complaint in the 1999 lawsuit to include a First Amendment Retaliation claim.[6] Rosendale v. Iuliano, 67 Fed. Appx. 10, 14 (2d Cir. 2003).

### C. Rosendale's Tax Assessment Lawsuit

---

[6] In his 1999 lawsuit, Plaintiff proceeded under a theory that the Defendants violated his due process rights under the Fifth and Fourteenth Amendments. Iuliano, 2002 WL 2031564, at *3. However, in his Rule 60(b) Motion, after judgment had been entered in the 1999 lawsuit, Plaintiff sought to bring a claim based on a First Amendment retaliation theory based on his beliefs that: (1) as a pro se litigant, the Second Circuit mandates that his claims should be "read generously" (Defendants' Exhibits at Exhibit D (hereinafter "Plaintiff's 60(b) Motion") at ¶ 27); (2) he had "concrete evidence" of retaliation, which he believed to be consistent with Dougherty v. Town of North Hempstead, 282 F.3d 83 (2d Cir. 2002), and Gagliardi v. Village of Pawling, 18 F.3d 188 (2d Cir. 1994). (Plaintiff's Rule 60(b) Motion at ¶ 31); and furthermore, (3) Dougherty held that "a litigant can amend his complaint to include a First Amendment claim even when the Fifth and Fourteenth Amendment claims have failed." (Plaintiff's Rule 60(b) Motion at ¶ 72).

5

In addition to the 1999 lawsuit Plaintiff filed in this Court, Plaintiff also filed a lawsuit (the "Tax Assessment lawsuit") in New York Supreme Court, Dutchess County ("State Court"), against the Town and Ronald J. Gazzoli ("Gazzoli"), individually and as assessor for the Town, alleging that his civil rights had been violated pursuant to § 1983. Specifically, Plaintiff alleged that: (1) Gazzoli and the Town violated his civil rights by taxing him differently than similarly situated citizens in Amenia;[7] (2) his property had been taken from him without due process in violation of the Fifth Amendment; and (3) he was deprived of his due process rights under the Fourteenth Amendment. See Defendants' Exhibits at Exhibit F ("Plaintiff's Tax Assessment lawsuit"). Plaintiff's Tax Assessment lawsuit was dismissed in its entirety by Decision and Order dated October 8, 2004 (Brands, J.), stating that , inter alia, "judicial review of a tax assessment is not permitted unless the complainant has first exhausted all administrative remedies, and complied with Article 7 of the RPTL for reviewing a tax assessment." Defendants' Exhibits at Exhibit G. Plaintiff admitted that he failed to comply with both requirements. Id. The State Court stated that it was therefore "without authority to grant the relief plaintiff seeks." Id. The State Court also based its decision on Plaintiff's failure to present evidence to support his equal protection claim. Finally, the State Court noted that Plaintiff was seeking tax relief for the same claims in the instant federal action, and even though the Court conceded that there was no need to address this particular argument, it stated that "it is axiomatic

---

[7] In the Tax Assessment lawsuit, Plaintiff sought damages against the Town and Gazzoli based on Plaintiff's claims that: (1) he was denied a request for a senior citizen partial tax exemption, to which Plaintiff claims he was entitled pursuant to Real Property Tax Law (RPTL") § 467; (2) he was denied a partial tax exemption for a new agricultural structure, to which he claims he was entitled pursuant to RPTL § 483; and (3) he was wrongfully denied a tax abatement for his hay storage shed, to shich he claims he was entitled pursuant to RPTL § 485-a. See Defendants' Exhibits, Exhibit G at 1.

that this court should not proceed where there is another action pending between the same parties for the same relief in another court of this State or the United States." Id. at 2-3.

### D. The Instant Lawsuit

Plaintiff commenced the instant action on August 18, 2003 ("Rosendale II" or the "2003 lawsuit"), claiming that the failure of the Defendants to enforce the conditions of the Special Use Permit has caused him to sustain permanent hearing loss, and has also caused the value of his property to decline significantly.[8] Specifically, in his First Amended Complaint ("Complaint"), Plaintiff alleges claims under § 1983 and New York state law. Under § 1983, Plaintiff claims that the Defendants retaliated against him in violation of his First Amendment right to petition the government, and subjected him to unequal protection in violation of the Fourteenth Amendment. Plaintiff also claims that because of the Defendants' retaliatory actions, he should not be required to pay taxes assessed for zoning enforcement. Plaintiff also brings pendent state law claims against the Defendants, asserting that: (1) the Defendants retaliated against him in violation of his rights under the New York Constitution; (2) the Defendants took his property without just compensation in violation of the New York Constitution; (3) Tamarack, as well as other establishments abutting Plaintiff's property, constitute public and private nuisances; (4) he should be allowed to proceed under New York Real Property and Procedures Law ("RPAPL"), § 841; (5) the Defendants are liable to him for his hearing loss under state tort law; and (6) the Defendants are liable to Plaintiff under New York General Business Law § 7 by refusing to enforce the conditions of the Special Use Permit and consequently allowing shooting contests to be held prior to 1:05 p.m. on the Sabbath.

The Defendants answered the Complaint on October 10, 2003. On July 20, 2004,

---

[8] Plaintiff seeks monetary damages for his physical injuries, as well as compensation for any decline in the value of his property and equitable and injunctive relief.

8

Plaintiff filed a Motion for Partial Summary Judgment, which he later withdrew. Docket entry 30. On November 7, 2005, the Defendants filed Notice of Motion for Summary Judgment (the "Defendants' Motion") to dismiss Plaintiff's claims in their entirety. On December 27, 2005, Plaintiff filed his opposing papers, and on Janurary 6, 2006, the Defendants replied. On January 10, 2006, Plaintiff submitted a "Sur-Reply" and Affidavit in Opposition, stating that he is aware that he did not receive permission from the Court to do so and therefore, it may "disregard" his submission. See Letter to the Undersigned dated January 10, 2006. The Defendants submitted a letter opposing the submission of Plaintiff's Sur-Reply on January 11, 2005, and on January 12, 2006, Plaintiff submitted a letter stating that he does not object to the Defendants' being "allowed to rebut" his submission. After considering all of the foregoing submissions, I will consider Plaintiff's Sur-Reply and grant it the appropriate weight, if any, to which it is entitled.

## II. DISCUSSION

### A. The Standard for Dismissal Pursuant to Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure ("Rule 56")

Under the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 320-23 (1986). "Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement may constitute grounds for denial of the motion." Local Civ. R. 56.1(a). A

9

dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A trial judge may, therefore, grant summary judgment only if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law. See Anderson, 477 U.S. at 250. The inquiry performed is the threshold inquiry of determining whether there are any genuine factual issues that properly can be resolved only by a finder of fact. Id.

Where a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56. Under Local Rule 56.1(b), "the papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried." Local Civ. R. 56.1(b). In addition, "[e]ach statement *by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement* of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e)." Local Civil Rule 56.1(d) (italics in original).

Summary judgment may be granted only "[i]f after discovery, the nonmoving party 'has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.' " Berger v. United States, 87 F.3d 60, 65 (2d Cir. 1996) (quoting Celotex, 477 U.S. at 323) (alteration in original). "The nonmoving party must have 'had the

opportunity to discover information that is essential to his [or her] opposition' to the motion for summary judgment." Trebor Sportswear Co. v. The Limited Stores, Inc., 865 F.2d 506, 511 (2d Cir.1989) (quoting Anderson, 477 U.S. at 250 n. 5). Moreover, a court should "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in its favor." Mount Vernon Fire Ins. Co. v. Belize NY, Inc., 277 F.3d 232, 236 (2d Cir. 2002); Farias v. Instructional Sys., Inc., 259 F.3d 91, 97 (2d Cir. 2001); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 764 (2d Cir. 1998); see also Anderson, 477 U.S. at 261 n.2. Thus, "[o]nly when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." Cruden v. Bank of New York, 957 F.2d 961, 975 (2d Cir. 1992) (quoting H.L. Hayden Co. of New York, Inc. v. Siemans Med. Sys. Inc., 879 F.2d 1005, 1011 (2d Cir. 1989)).

### B. Plaintiff's Federal Claims

The Defendants' primary argument for dismissing Plaintiff's § 1983 claims is that the 2003 lawsuit is barred by res judicata. Specifically, the Defendants argue that the "core grievance" in both Rosendale I and Rosendale II is the existence and continuing operation of Tamarack, and that any new claims that Plaintiff purports to make in Rosendale II arise from this same "core of operative facts." Defendants' Memorandum of Law in Support of its Motion for Summary Judgment ("Defendants' Memorandum") at 2 and 7. In order to prevail on grounds of res judicata, the Defendants must show that the previous action involved the same Plaintiff or those in privity with the Plaintiff, that the previous action was adjudicated on the merits, and that the claims raised in the subsequent action were, or should have been, raised in the previous action. See Monahan v. New York City Department of Corrections, 214 F.3d 275, 285 (2d Cir.

11

2000) (*citing* Allen v. McCurry, 449 U.S. 90, 94 (1980); Burgos v. Hopkins, 14 F.3d 787, 789 (2d Cir. 1994); N.A. v. Celotex Corp., 56 F.3d 343, 345-46 (2d Cir. 1995)).  The Defendants have satisfied the first two prongs as the parties in the 1999 and the 2003 lawsuits are substantially the same, and the 1999 lawsuit was adjudicated on the merits.  See Weston Funding Corp. v. Lafayette Towers, Inc., 550 F.2s 710, 713-715 (2d Cir. 1977).  At issue in this case is whether the Defendants have sufficiently shown an "identify of claims" sufficient to support a finding of res judicata.  See  Monahan, 214 F.3d at 289.

Plaintiff concedes that Rosendale II is based "in part" on the issuance of the Special Use Permit to Tamarack in 1991 (Complaint at ¶ 6), and that the Town's "intentional neglect of the Tamarack nuisance is the most egregious example of the Town's retaliation against him." Complaint at ¶ 9.  However, he further claims that the 2003 lawsuit contains additional allegations of retaliation against the Defendants, and that these claims had not "matured" during the time he litigated Rosendale I.  Complaint at ¶ 68.  For example, Plaintiff claims that since the 1999 lawsuit, he has lodged complaints regarding: (1) the construction of a cell tower next to his property and the Defendants' failure to provide him with "screening" to block his view of the cell tower from his property although they readily provided sufficient screening to a neighbor (see discussion infra at 16-17); (2) the excessive noise and traffic caused by a restaurant called "Steakhouse on the Ridge," which is located on the Twin Silos Golf course that abuts his property (see Defendants' Exhibits at Exhibit S); and (3) the alleged illegal operation of an auto body shop, which Plaintiff claims is located within 100 feet of his property line and causes toxic materials to be dumped into a small stream (see id.).  Complaint at ¶ 68.

Plaintiff also engages in a confusing legal analysis to support his claim that his First

Amendment claims are timely. To illustrate, Plaintiff asserts that he could not have proceeded under a retaliation theory in the 1999 lawsuit because "he was barred by doing so by a similar 'ripeness test' imposed by Kittay v. Giuliani[,252 F.3d 645 (2d Cir. 2001)]." Complaint at ¶ 70; Plaintiff asserts that he is now allowed to bring such a claim due to the Second Circuit's ruling in Dougherty, 282 F.3d at 83, which he interprets as overruling the "ripeness test" he alleged was set forth in Kittay. Complaint at ¶ 70. Incidentally, Plaintiff made this same argument in his Rule 60(b) Motion in Rosendale I, which was denied in its entirety by the District Court, which decision was affirmed by the Second Circuit. See Iuliano, 67 Fed.Appx. at 13-14. Plaintiff's arguments, which are completely without merit, are equally unpersuasive in the instant case.[9]

Although Plaintiff attempts to argue that his additional claims of retaliation make his claims in Rosendale II separate and distinct from Rosendale I, it is abundantly clear that both lawsuits arose from a "single core of operative facts." Norman v. Niagra Mohawk Power Corp., 873 F.2d 634, 638 (2d Cir. 1989). Both actions center around the Special Use Permit issued to Tamarack in 1991, and the Defendants' alleged failure to enforce the conditions of the Special Use Permit. Additionally, Plaintiff's claim challenging the assessment of municipal taxes against him is also duplicative of the claims he litigated in State Court in the Tax Assessment

---

[9] I also note that Plaintiff appears to have grossly misinterpreted the judgments of both the District Court and the Court of Appeals in Rosendale I. In Plaintiff's letter to Defendant Smith dated July 7, 2003, Plaintiff states: "The first round in my effort to require the town to enforce the conditions of the permit (if in fact any permit was actually ever issued) to Tamarack ended in a draw. As I read it, the U.S. Court of Appeals has held that while I had not stated a case on the theories of law which I did plead, it left the door open for me to pursue the matter in Federal court arguing that the town's refusal to enforce the conditions is in retaliation for my exercise of my First Amendment rights, and gave me a blueprint had [sic] to proceed in state court." See Defendants' Exhibits at Exhibit R.

13

lawsuit against the Town and Gazzioli. As discussed <u>supra</u> at Section I.C, the State Court dismissed Plaintiff's claims in a Decision and Order (Brands, J.) on October 8, 2004. Defendants' Exhibits at Exhibit G. Moreover, this Court lacks jurisdiction to hear Plaintiff's tax assessment claim under the Tax Injunction Act, as well as principles of comity. See <u>Long Island Lighting Co. v. Town of Brookhaven</u>, 889 F.2d 428, 431 (2d Cir. 1989). "It is the identify of facts surrounding the occurrence which constitutes the cause of action, not the legal theory upon which Woods chose to frame her complaint." <u>Woods v. Dunlop Tire Corp.</u>, 972 F.2d 36, 39 (2d Cir. 1992).

Thus, I conclude, and I respectfully recommend that Your Honor should conclude, that Plaintiff's claims in the 2003 lawsuit are duplicative for purposes of <u>res judicata</u>. See <u>Berlitz Sch. of Languages of Am., Inc. v. Everest House</u>, 619 F.2d 211, 215 (2d Cir. 1980) ("[W]hatever legal theory is advanced, when the factual predicate upon which claims are based are substantially identical, the claims are deemed to be duplicative for purposes of *res judicata*."). Accordingly, I respectfully recommend that Your Honor dismiss Plaintiff's § 1983 claims as they are precluded by the doctrine of <u>res judicata</u>.

In the alternative, the Defendants argue that Plaintiff's claim are barred by the applicable statute of limitations. The statute of limitations for § 1983 actions brought in federal court in New York is three years. <u>Covington v. City of New York</u>, 916 F.Supp. 282, 285 (S.D.N.Y. 1996). Plaintiff filed the 2003 lawsuit on August 18, 2003. Thus, Plaintiff must show that his claim accrued on or after August 18, 2000, or his § 1983 claims will be dismissed as time-barred. A § 1983 action accrues "when the plaintiff knows or should know of the injury that is the basis of the cause of action." <u>Id.</u> (citing <u>Woods v. Candela</u>, 13 F.3d 574, 575 (2d Cir. 1994)) (internal

14

quotation marks omitted).

In his Complaint, Plaintiff sets forth a number of arguments in support of his argument that his claims in the 2003 lawsuit are not time-barred. First, Plaintiff claims that because he filed Rosendale I in 1999, the Statute of Limitations was tolled, "at a minimum, back to 1996." Complaint at ¶ 28. Plaintiff further reasons that New York Civil Practice Law and Rules ("CPLR") § 205(a) provides that the Statute of Limitations is extended for six additional months after the termination of Rosendale I. Second, Plaintiff argues that pursuant to CPLR § 203(g), the Statute of Limitations is renewed every time the noise from the Tamarack shooting range causes further damage to his hearing, and every time a prospective purchaser of his property is deterred from making an offer due to the Tamarack "nuisance." Complaint at ¶ 42. Third, Plaintiff argues that his retaliation claims with respect to the cell tower, the Steakhouse on the Ridge restaurant, and the auto body shop are timely as they accrued within the last three years. Complaint at ¶ 43. Last, Plaintiff relies on Judge Parker's decision in Rosendale I, in which he states that Plaintiff's claims were not time-barred. Complaint at ¶ 47; Iuliano, 2002 WL 215656, at *3. In their Motion for Summary Judgment, the Defendants argue that: (1) Plaintiff's claims do not "relate back" to the filing date of Rosendale I; (2) CPLR § 205(a) is inapplicable to the facts at issue in Rosendale II; and (3) Plaintiff's apparent reliance on a continuing violation theory is without merit.

The Defendants correctly argue that Plaintiff's claims do not "relate back" to Rosendale I. It is unclear upon what, if anything, Plaintiff is basing this particular argument. In any event, it is meritless. Additionally, CPLR § 205, which clearly states has no application to an action that has been terminated by a "final judgment on the merits," has no relevance to Plaintiff's

15

claims.  See CPLR § 205(a).

Contrary to the Defendants' arguments in their Reply Memorandum of Law in Support of their Motion for Summary Judgment ("Defendants' Reply"), the Second Circuit has applied the continuing violation doctrine outside of the Title VII context, and it has specifically applied the doctrine to § 1983 claims.[10]  In any event, even assuming arguendo that the statute of limitations had not run with respect to Plaintiff's § 1983 claims, he has failed to allege that he has been deprived of a federal right.  Plaintiff first claims that the Defendants violated his First Amendment rights.  To state a cognizable First Amendment retaliation claim, a plaintiff must show that his conduct was protected by the First Amendment, and that such conduct "prompted or substantially caused defendant's actions."  Dougherty, 282 F.3d 83, 91 (2d Cir. 2002) (citations omitted).  "The Right to complain to public officials and to seek administrative and judicial relief from their actions are protected by the First Amendment."  Id.  (citations omitted).  Thus, Plaintiff's actions as alleged in Rosendale II constitute conduct that is protected by the First Amendment.  The issue here is whether the Defendants' actions were motivated by Plaintiff's protected conduct.  Plaintiff alleges that the Defendants retaliated against him by

---

[10] In support of their argument that the continuation violation doctrine is inapplicable to Plaintiff's claims in Rosendale II, the Defendants primarily rely on a Tenth Circuit decision, Rassam v. San Juan College Board, 113 F.3d 1247 (10 Cir. 1997), as well as a 1994 decision issued by this Court.  See Bailey v. New York City Transit Authority, 92 Civ. 2674 (PKL), 1994 WL 376046, at *1 (S.D.N.Y. July 18, 1994) (unreported).  Based on these decisions, the Defendants assert that this Circuit looks upon arguments that are based on a continuing violation theory with disfavor, and thus, rarely apply the doctrine outside of the context of Title VII employment discrimination cases.  Defendants' Reply at 2-3.  Nevertheless, this Circuit has applied the continuing violation doctrine to § 1983 claims.  See Washington v. County of Rockland, 373 F.3d 310, 318 (2d Cir. 2004); Cornwell v. Robinson, 23 F.3d 694, 703-704 (2d Cir. 1994); see also Remiggio v. Kelly, 04 Civ. 1877 (JGK) (MHD), 2005 WL 1950138, at * 6-8 (S.D.N.Y. August 12, 2005) (noting that cases following the Supreme Court's decision in Morgan have pointed out that the continuing violation doctrine "may be available for § 1983 claims based on, for example, an ongoing municipal policy or custom.") (citations omitted).

failing to enforce the conditions of Tamarack's Special Use Permit, as well as neglecting to respond to satisfactorily with respect to his complaints regarding the cell tower, the Steakhouse on the Ridge restaurant, and the auto body shop. However, there has been no evidence presented which would allow a fact-finder to conclude that these actions or omissions by the Defendants were in any way connected to or were a response to the protected conduct of Plaintiff. Thus, I conclude, and I respectfully recommend that Your Honor should conclude, that Plaintiff has failed to state a cognizable First Amendment retaliation claim.

Plaintiff also claims that the Defendants violated his constitutional right to equal protection by treating him differently than similarly situated citizens in the Town of Amenia. "A state and its instrumentalities may not deny " 'any person within its jurisdiction the equal protection of the laws.' " Sound Aircraft Service, Inc. v. Town of East Hampton, 192 F.3d 329, 335 (2d Cir. 1999) (citing U.S. Const. Amend. XIV). Equal protection essentially "prohibits the government from treating similarly situated persons differently." Id. (citations omitted). Plaintiff has failed to state an Equal Protection claim in Rosendale II.

Plaintiff's equal protection claim stems from his complaints regarding the construction of a cell tower near his property. In April, 2001, Nextel New York, Inc. ("Nextel") applied for a special use permit, and a variance, to allow Nextel to build a cell tower on land that is also located adjacent to Plaintiff's property. Complaint at ¶10B.[11] The ZBA granted Nextel's application for both the permit and the variance on November 1, 2002, subject to certain conditions. Defendants' Exhibits at Exhibit W. At the ZBA hearing granting the application, it

---

[11] After ¶ 10 on page 4 of the Complaint, Plaintiff apparently erred as he repeated ¶¶ 9 and 10. Therefore, I will refer to the second set of paragraphs numbered "9" and "10" as "9A" and "10B."

17

was provided that "Nextel will confer with Mr. Rosendale regarding additional, reasonable screening on or near his property if he so chooses. . . . This will be addressed during site plan." Id. at 15; Complaint at ¶ 12. In the site plan, the Amenia Planning Board ("Planning Board") stated that Nextel would post a $10,000 bond to secure "reasonable on site landscaping" to "screen" Plaintiff's property as well as the property of Plaintiff's neighbor Mr. Murphy ("Murphy"), and that the landscaping would be determined prior to the issuance of a Certificate of Occupancy. Defendants Exhibits, Exhibit Y at ¶ 6. Additionally, the Planning Board provided for Plaintiff and Mr. Murphy to have thirty days to work with Nextel to agree upon any landscaping modifications. Id.

Plaintiff claims that he was subsequently contacted by an employee of Tectonic Engineering, the company that prepared the site plan for Nextel, and was told that there was no way to "reasonably" screen the view of the cell tower from Plaintiff's property. Complaint at ¶ 13. As a result of the foregoing, Plaintiff claims that he has been subjected to unequal treatment because the Nextel site plan provides for screening for Murphy's property, but not Plaintiff's. Complaint at ¶ 14. Although Plaintiff alleges that he was treated differently from Murphy, such generalized allegations do not constitute an equal protection claim. See Sound Aircraft, 192 F.3d at 335. It must be further established that the Defendants intentionally sought to disadvantage a class of persons that includes Plaintiff as a member. See id. (quoting Crawford-El v. Britton, 523 U.S. 574, 592 (1998)). Here, the only evidence of disparate treatment is that Tectonic Engineering, as an agent of Nextel, may have treated Plaintiff differently than his neighbor. There is no evidence from which a fact finder could infer that any of these Defendants had any input in or responsibility for that decision. Therefore, I conclude, and I respectfully

18

## III. CONCLUSION

For the reasons set forth above, I respectfully recommend that Your Honor grant the Defendants' Motion for Summary Judgment in its entirety, and that Your Honor dismiss all of Plaintiff's claims against the Defendants.

## IV. NOTICE

Pursuant to 28 U.S.C. 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(e), or a total of thirteen (13) working days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of The Honorable Charles L. Brieant at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address. Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Brieant.

Dated: February 3, 2006
White Plains, New York

Respectfully Submitted,

LISA MARGARET SMITH
UNITED STATES MAGISTRATE JUDGE

A copy of the foregoing Report and Recommendation has been sent to the following:

The Honorable Charles L. Brieant

19