UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
DONALD P. ROSENDALE,

                                    Plaintiff,

                                                            03 Civ. 6181 (CLB)

              - against -
                                                            *Memorandum and Order*

THOMAS LEJEUNE, As Amenia, N.Y. Town
Supervisor, DONALD J. SMITH, as Amenia,
N.Y. Zoning Code Enforcement Officer,
THE TOWN OF AMENIA, NEW YORK,

                                    Defendants.
-----------------------------------------------------------x
Brieant, J.

        Before this Court for consideration is the Report and Recommendation of the Hon.

Lisa Margaret Smith, United States Magistrate Judge, filed February 3, 2006 in this civil rights

action, together with Plaintiff's Objections thereto received February 21, 2006 consisting of

twenty-nine pages plus attachments, supplemented under date of February 28, 2006, and

Defendants' Reply to the Objections, filed March 6, 2006.


        Familiarity of the reader with the Report and Recommendation is assumed.  The

Magistrate Judge recommended that the Court grant Defendants' Motion for Summary Judgment

in its entirety and dismiss all of the Plaintiff's claims against the Defendants.


        This case demonstrates the wisdom of the oft repeated admonition of our Court of

Appeals that "federal courts should not become zoning boards of appeal.  State courts are better

equipped in this arena and we should respect principles of federalism and avoid unnecessary

-1-

state-federal conflict with respect to governing principles in an area principally of state concern. Litigants do themselves a disservice when they attempt to clothe state causes of action in the garb of a federal claim while ignoring available state remedies." *Harlen Associates v. Village of Mineola*, 273 F.3d 494, 505 (2d Cir. 2001). This case is unlike the long line of cases, starting with *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1926) and including *Harlen,* in which property owners complained of excessive land use restrictions which devalued their property; here Plaintiff complains of failure or refusal to enforce the zoning against several neighbors, allegedly because of a desire to retaliate against him for exercise of his First Amendment rights.

This lawsuit was filed August 18, 2003 against a background of prior litigation between Plaintiff and the Town of Amenia in the State and Federal Courts. Mr. Rosendale asserts a number of separate claims in his First Amended Complaint filed October 8, 2003, alleging issues arising under the United States Constitution and also under New York law. He claims Defendants retaliated against him by actions and inactions taken under color of state law against him for having exercised his First Amendment rights to speak out on issues of public importance and to petition the government and that they denied him equal protection in violation of the Fourteenth Amendment. He claimed initially that Defendants took his property without just compensation in violation of the New York Constitution, that a neighboring rod and gun club known as Tamarack and a cell phone antenna adjoining his property constitute public and private nuisances and violate local land use regulations; that Defendants are liable to him for hearing loss under New York State tort law and also as a direct result of their First Amendment violation in failing to enforce local land use regulations violated in the operation of the rod and gun club

and; the Defendants are liable to him by failing to enforce the conditions of the Tamarack Special Permit and by allowing shooting contests to be held prior to 1:05 p.m. on the Sabbath in violation of state blue laws.[1]

Plaintiff resides in the Town of Amenia where he owns 104 acres of property operated as a horse farm and used as his principal residence. On November 30, 1990, Tamarack submitted an application to the Town Board of Appeals for a Special Use Permit to establish a rod and gun club. The permit was ultimately issued to Tamarack after intervening proceedings not material to this decision, on June 13, 1991 subject to certain conditions. Thereafter, Plaintiff began to complain to public officials about the noise caused by Tamarack, and failure to enforce the conditions imposed. Later his complaints were expanded to include the cell phone antenna, an auto body repair shop and a restaurant at an adjoining golf club.

Defendant Smith served as the enforcement officer for local Town of Amenia Land Use Regulations (Zoning) from November 1, 2001 through March 2004. Defendant LeJeune served as Town Supervisor from January 1, 2002 through December 31, 2003. This suit now names only the Town itself, LeJeune and Smith as defendants.

The learned Magistrate Judge first considered in her Report and Recommendation, the effect of prior litigation on this lawsuit. She reported that, on December 1, 1999, Mr. Rosendale

---

[1]On this latter point, it is clear that the Town of Amenia has no separate police force, and the New York General Business law is enforced by the New York State Police.

filed a lawsuit in this Court (Rosendale I) for punitive and compensatory damages and a refund of property taxes because of Defendants' failure to enforce the conditions of the Special Use Permit issued to the rod and gun club, which caused his property to be taken without just compensation; that Defendants' actions or a failure to act denied him procedural due process; that Tamarack constituted a public and private nuisance and that the Defendants violated the New York blue laws prohibiting professional contests disturbing the peace before 1:05 p.m. on the Sabbath (Second Amended Complaint). Ultimately, the District Court (Judge Cote) granted summary judgment to all Defendants in Rosendale I, concluding that the Plaintiff had failed to establish that he had a protected property right in the enforcement of the Amenia Zoning and Building Code and that, in any event, he could have pursued an Article 78 proceeding in the New York Supreme Court to challenge the Town's failure to do so. This judgment issued by Judge Cote of this Court was affirmed on direct appeal essentially for the same grounds relied upon by the District Court, in *Rosendale v. Iuliano,* 63 Fed. Appx. 52, 53 (2d Cir. 2003). Familiarity therewith on the part of the reader is assumed.

Mr. Rosendale moved under Rule 60(b) to vacate that judgment based on newly discovered evidence in order to claim for the first time on the theory of First Amendment retaliation that certain of the Defendants' actions were retaliatory measures taken against him because of their dissatisfaction with his speech about noise at Tamarack and other matters. This motion was denied and the denial was also affirmed on direct appeal by the Court of Appeals for the Second Circuit which specifically held on appeal that Plaintiff's post-judgment request to file a proposed fourth amended complaint in Rosendale I was properly denied. The Plaintiff cited

directly to the Court of Appeals in Rosendale I, the case of *Gagliardi v. Village of Pawling,* 18 Fed. 3d 198 (2d Cir. 1994) discussed below.

Thereafter, Mr. Rosendale filed a lawsuit in New York Supreme Court Dutchess County against the Town and its tax assessor. In that case, Mr. Rosendale alleged that the Town and the assessor had violated his civil rights by taxing him differently than similarly situated land owners in that he was denied a request for a senior citizen partial tax exemption and was denied a tax exemption for a new agricultural structure and a tax abatement for his hay storage shed. The Supreme Court dismissed the case in its entirety on October 8, 2004 for failure to exhaust administrative remedies and failure to present evidence in support of an equal protection claim.

Thereafter, the Dutchess County Office of Real Property Services (ORPS) established under New York Real Property Tax Law § 556, confirmed that an error existed in connection with his agricultural exemption. The exemption was recomputed and ORPS recommended the taxpayer receive partial refunds for the 2002 and 2003 tax years. ORPS failed to recommend refunds for prior periods, which were regarded as time-barred under state law.

The Magistrate Judge concluded that the "primary argument for dismissing Plaintiff's 1983 claims" is founded on *res judicata* arising out of Rosendale I. This is claimed to be so because the same core of operative facts is asserted in both cases and the prior case also involved the Town of Amenia and certain of its public officials. Mr. Rosendale conceded that the present case is based "in part" on the issuance of the Special Use Permit to Tamarack in 1991

(Compl. ¶ 6) and the Town's "intentional neglect of the Tamarack nuisance" which he cites as the "most egregious example of the Town's retaliation against him."

Plaintiff also claimed before the Magistrate Judge that the instant lawsuit contains additional allegations of retaliation which had not matured while Rosendale I was pending. He says that since filing the First Amended Complaint in Rosendale I, he complained to local officials concerning the construction of a cell phone antenna next to his property and failure to provide screening to block his view of the antenna, although neighbors were provided with screening; excessive noise and traffic caused by the Restaurant located on an adjoining golf course that touches his property; alleged illegal operation of an auto body shop located near his property which allegedly dumps toxic materials into a stream (Compl. at ¶ 68). The Magistrate Judge recommended that these additional claims of retaliation subsequent to Rosendale I be treated as arising from the single core of operative facts; that, in light of the Tax Injunction Act and principles of Comity, there is no jurisdiction to hear so much of Plaintiff's tax assessment claim which was rejected by the Dutchess County ORPS as time-barred. *See Long Island Co. v. Town of Brookhaven*, 889 F.2d 428, 431 (2d Cir. 1989). The Magistrate Judge also concluded that any claims which accrued prior to August 18, 2000 should be dismissed as time-barred.

Plaintiff argued before the Magistrate Judge that the pendency of Rosendale I tolled the Statute of Limitations and that he was entitled in the New York courts to six additional months after the termination of Rosendale I, pursuant to N.Y. CPLR § 205(a) to reinstitute in the state courts any claims not disposed of on the merits in Rosendale I. He also argued that the Statute of

Limitations began to run again every time a noise from the rod and gun club caused him damage. Also, that his retaliation complaints with respect to failure to enforce local land use regulations against the neighboring phone antenna, the Restaurant and the auto body shop are timely because they accrued within the three years prior to August 18, 2003.

The Magistrate Judge reported, correctly, that the claims do not relate back to Rosendale I, and that New York CPLR § 205 has no application in this Court or to the claims precluded by the judgment in Rosendale I.

The cell phone antenna equal protection claim asserted is based upon the fact that the Zoning Board of Appeals of the Town after a hearing, granted a permit, providing therein that "Nextel will confer with Mr. Rosendale regarding additional, reasonable screening on/or near his property if he so chooses..." Plaintiff claimed that he was subsequently contacted by an employee of an engineering firm retained by Nextel and told there was no way to "reasonably" screen the cell phone antenna from his property, and that he was treated differently from another adjoining owner for which screening was provided.[2] The Magistrate Judge concluded that the claim was insufficient because "it must be further established that the Defendants intentionally sought to disadvantage a class of persons that includes Plaintiff as a member" and that there was no evidence of disparate treatment on the part of the Defendants but merely that Tectonic Engineering as an agent of Nextel, may have treated the Plaintiff differently than his neighbor

---

[2]The cell phone antenna can be seen from the property, but not from the existing residence.

Murphy.  The Magistrate Judge reported that there was no evidence "from which a fact-finder could infer that any of these Defendants had any input in/or responsibility for that decision."

After concluding that summary judgment should be granted with respect to all of the Federal claims, the Magistrate Judge recommended that this Court dismiss Plaintiff's supplemental state law claims without prejudice.  This is the ordinary and proper result in such a situation and this Court accordingly will not deal with any objections to the Report concerning claims arising solely under New York State law.

*The Objections*

The Court will consider one-by-one in the order presented, the Objections asserted by Plaintiff to the Report and Recommendation.  The first objection asserted is that counsel for the Defendant did not serve and file the requisite notice to pro se litigants required under Local Rule 56.2 "and I was penalized as a result."  Mr. Rosendale has not been penalized and will not be.  This Court's *de novo* decision with respect to the Defendants' Motion for Summary Judgment discussed in the Report and Recommendation will not rely on the failure to file formal affidavits of the physicians or any other identified witness.  Mr. Rosendale has submitted his own affidavits
and an adequate Local Rule 56.1 Statement.

Mr. Rosendale is a mature, educated and articulate person with an extensive career experience as a business executive and substitute high school teacher.  He is no stranger to

litigation; a member of that select group of pro se litigants known as "frequent filers," with an exceptional understanding of federal civil procedures. He has been the plaintiff in a large number of civil cases, state and federal, in some of which he has been represented by counsel, and in others has appeared pro se. It is clear from the record before this Court and before the Magistrate Judge that Mr. Rosendale as an experienced litigator understood the nature and consequences of summary judgment. *Forsyth v. Federation Employment and Guidance Service,* 409 F.3d 565, 570 (2d Cir. 2005).

In any event, because of the non-compliance with Local Civil Rule 56.2, this Court has searched the record and has invited the submission and filing of the pre-trial discovery in this case, contrary to the usual practice of the district court reflected in Local Civil Rule 5.1. Mr. Rosendale asserts that he is aggrieved by the absence of the Local Civil Rule 56.2 notice, because he thought that unsworn letters from his physician and a medical expert would qualify as "affidavits," for purposes of compliance with Rule 56. This relates to medical reports concerning Mr. Rosendale's hearing loss which he attributes to the noise of the rod and gun club. This Court will treat as affidavits for purposes of this motion the letter reports and submissions of Doctor Paul Gittelman who apparently performed an independent otolaryngology review and personal examination of Mr. Rosendale's hearing on January 28, 2005 for Defendants, and those of Plaintiff's physicians, Doctors Gould and Ganz. The hearing loss claim applies equally to Plaintiff's federal claim and his state law nuisance claim.

Doctor Gittelman took a case history from Plaintiff and observed that he was a "sixty-

nine year old male who complains of gradually worsening hearing difficulties."  Dr. Gittelman noted that Plaintiff first complained of gradually worsening hearing difficulties approximately two years prior to January 28, 2005.  The school nurse did informal testing and informed him of an issue in the high octaves.  Plaintiff reported to Dr. Gittelman that he had been evaluated by Dr. Ganz in Manhattan who confirmed a hearing issue in the upper ranges.  Mr. Rosendale informed Dr. Gittelman that one portion of his property in Amenia is located as close as 600 feet from the nearest shooting location of the rod and gun club and the noise level has been measured as between 83 and 95 decibels and it was in operation "almost twelve hours per day for the past three to four years."  Although not mentioned in Dr. Gittelman's report, Plaintiff's home is approximately 2,250 feet from the nearest such location.[3]

Mr. Rosendale denied any significant noise exposure from any other or prior source.  Dr. Gittelman detected a wax impaction of the right ear and diagnosed asymmetric high frequency sensori-neural hearing loss, bilateral.  Dr. Gittelman noted that "the exact cause for the hearing loss is not known, possible etiologies include age-related decrease in hearing, trauma including noise exposure, medication - - - and stroke.  The Ganz Report, although considered by Dr. Gittelman, was not submitted with Plaintiff's Objections.  Plaintiff advises (Objections at 7) "My doctors and expert assert [the hearing loss] is because of the constant shooting noise from a shotgun range within feet of my back door...Defendant's medical expert confirms my hearing loss and asserts it may be from the shooting noise."

---

[3]Apparently nobody really knows the distances.  There are several locations on the rod and gun club property where shotguns are fired.  The owner was supposed to have created a Mylar overlay for the site plan, showing the locations of the firing sites, but never did so, or if it did, the Mylar cannot be found in Town records.

The letter report of Dr. Gould, which is undated but was telefaxed from his office on December 18, 2003, reports that "the origin of the hearing loss is in all medical probability due to noise exposure from a neighboring site." Dr. Gould also wrote under date of September 9, 2004 that "I feel certain within medical probability that his severe hearing is secondary to ambient noise emanating from the adjoining gun club." Assuming Dr. Gould so testifies at a trial of the case and is believed, Plaintiff will be able to prove causation. Testimony from a qualified professional expressing an opinion within reasonable medical certainty that the shooting of shotguns 600 feet from his property line and 2250 feet from his home is a competent producing cause of Plaintiff's resulting deafness is sufficient. It is not sufficient to say that the hearing loss "may" be from the shooting noise. Anything is possible. Mere possibility is insufficient. The expert must testify that it is more likely than unlikely that the shooting noise was a competent producing cause, although not necessarily the sole cause of the hearing loss. Frankly, this is highly implausible, but a disputed issue of causation exists which precludes summary judgment on the ground of no damages.[4]

The mere existence of a disputed issue of fact as to damage causation would not justify rejection of the Magistrate Judge's Report or denial of Summary Judgment. Plaintiff must prove at trial that not only that there is a chain of causation between some sort of damages and the violation of his First Amendment rights, but that the claims asserted are not precluded by

---

[4]Plaintiff withdrew on July 28, 2005 (Doc. 43) any claim of damages for diminution of value of his property due to operation of the rod and gun club or any of the other neighboring land use violations. He continues to claim damages for "chilling" his exercise of his rights and would also be entitled to general damages of the sort implicit in any Constitutional violation.

Rosendale I, and that Defendants in this case failed to enforce the code against the rod and gun club, not because of negligence, stupidity, because they were understaffed or for some other innocent reason, including the conscious exercise of their discretion as public officials, but rather out of a desire to retaliate against Mr. Rosendale for his First Amendment protected speech.

The next Objection asserted is that the Magistrate Judge's Recommendation must be disregarded because she exceeded her authority, as there is no 28 U.S.C. § 636(b)(1)(B) Order for her to file a Report and Recommendation. This Court on May 7, 2004 referred this case to the Magistrate Judge, after more than twenty-five docket entries had been made over more than nine months without achieving trial readiness. The reference was for general pre-trial purposes, specifically including scheduling, discovery, non-dispositive pre-trial motions and settlement. By local practice, it is understood that the Magistrate Judge may not *decide* summary judgment motions except on consent of all parties, but it is the ordinary practice in this district for the Magistrate Judge to submit a Report and Recommendation with respect to complex dispositive motions linked to pre-trial discovery, unless directed not to do so. This Court regularly reviews and considers such Reports and Recommendations, and any Objections submitted with respect thereto, *de novo,* as required by law. The Magistrate Judge did not exceed her authority in the matter. Indeed, she should be commended for her patience and perseverance, faced with a case file which seems to have taken on a life of its own, with more than ninety docket entries and sixty-eight separate documents on file.[5]

---

[5]This proliferation of paper and the numerous discovery issues presented to the Magistrate Judge are not by any means entirely the fault of Plaintiff.

This Court considers next the issue of claim preclusion.  It is law of the case under Rosendale I that Plaintiff has failed to establish that he had a protected property right in the enforcement of the Amenia Zoning and Building Code.  *See Rosendale v. Iuliano*, 63 Fed. Appx. 52, 53 (2d Cir. 2003).  The Court of Appeals held that: "Rosendale has pointed to no provision of

law that requires the Town to institute enforcement proceedings against Tamarack and therefore he had no cognizable property interest," citing *Zahra v. Town of Southhold*, 48 F.3d 674, 681-82 (2d Cir. 1995) and also *Gagliardi v. Village of Pawling* referred to earlier.  The Court of Appeals also noted that the municipal defendants retained discretion in enforcing the Town's zoning laws.


Mr. Rosendale asserts in his Objections, p. 7 that after the judgment in Rosendale I, the Zoning Enforcement Officer of the Town issued invalid permits for the cell phone antenna adjacent to his property.  The building permit was supposedly invalid because it was issued sixteen days after the variance granted for the structure had expired.  The permit for the cell phone antenna issued on June 24, 2003, and the variance was decided on January 9, 2002, expiring June 8, 2003.  On November 14, 2003, a Certificate of Occupancy issued.  Cell phone antennas are as about unpopular in the suburbs as cell phones are popular.  Failure to enforce strict time limits on building permits and zoning variances is quite common in the smaller communities, and as noted earlier, there is no requirement that the Town enforce such provisions to the letter.  Article 78 of the New York Civil Practice Law and Rules provides a quick expeditious remedy to assert and enforce any rights which may exist in favor of property owners and taxpayers generally in the community, and as was held in Rosendale I, Plaintiff has no

vested property right in the enforcement of the zoning.  Mr. Rosendale may prevail with respect

to the cell phone antenna only if he can show by admissible evidence that the alleged laxity was

permitted, not as part of a policy or general practice but in order to retaliate against Plaintiff for

having exercised his First Amendment Rights.  While this Court agrees with Plaintiff that issues

arising after February 13, 2002 are not barred by the doctrine of *res judicata* otherwise expressed

as issue preclusion or claim preclusion, arising out of Rosendale I, the claim that the Plaintiff has

some special property right in enforcement of the zoning laws and rules is barred by the law of

the case in Rosendale I, quoted earlier.


Plaintiff claims that he was disadvantaged with respect to his real estate taxes as a result

of First Amendment retaliation.  He contends that in 2004, one Gazzoli, tax assessor, not a party

to this litigation, threatened to increase his [assessment] by 600 percent because he was pursuing

this lawsuit, and thereafter sought to do so.  There is no evidence that Gazzoli in fact did increase

the assessments.  No basis exists to hold the present Defendants sued in this action liable for any

threats by Gazzoli.


It was not a Constitutional violation for prior counsel for the Town to receive public

records in possession of the assessor, and, in any event, the assessor who turned over the

agricultural exemption files to the prior attorney for the Town is not a named defendant in this

action.  That the prior Town Attorney, Mr. Kerr, allegedly threatened Plaintiff is regrettable, but

he is not a Defendant in this case.

There is no Town liability under § 1983 based on *respondeat superior.  See Monell v. Department of Social Services,* 436 U.S. 658, 694 (1978).

*The Tax Claims*

Plaintiff contends that he should get a greater refund of his concededly improperly computed real estate taxes, as found by Dutchess County ORPS, because the Statute of Limitations for Section 1983 claims is longer than that New York State statute for tax refunds. Section 1983 may not be used as a means of evading a New York statute of repose.  Improper real estate  taxation is not actionable under Section 1983, for the reasons stated by the Magistrate Judge in her Report.  See  also *Long Island Lighting Co. v. The Town of Brookhaven*, 889 Fed. 2d 428, 431 (2d Cir. 1989).

Summary Judgment is properly granted in this case dismissing all real property tax related claims.

*The Zoning Claims*

The Magistrate Judge noted that "there has been no evidence presented which would allow a fact-finder to conclude that these actions or omissions by the Defendants [to enforce the land use regulations against the rod and gun club, the cell phone antenna, the restaurant and the auto body shop] were in any way connected to or were a response to the protected conduct of Plaintiff."  This Court's own *de novo* review finds none.

No evidence at all has been submitted, admissible or otherwise, on this record to support a finding at a jury trial that the individual Defendants sued in this case, or the policymaking members of the Town Board were motivated by any desire to retaliate, or that they did so. Such retaliation will not be assumed in the absence of some admissible evidence which will support an inference by a trial jury that First Amendment retaliation took place as charged, and that the Constitutional violation was committed by one of the two individual Defendants sued here, while employed by the Town and acting under color of state law, or by a policy making official, such as the Town Supervisor or a Town Board member, acting on and after February 13, 2002, the date Judge Cote accepted the Plaintiff's Third Amended Complaint in Rosendale I.

Mr. Rosendale seems to argue, or to assume, that the totality of the claimed failures to enforce the land use regulations affecting his immediate neighbors, the rod and gun club, the cell phone antenna, the restaurant and the auto body shop, are so egregious that a jury may find it retaliatory. More admissible evidence than that is needed to survive summary judgment. Plaintiff's own evidence shows that throughout the relevant period, and before, the zoning code enforcement office was underfunded, understaffed and inefficient. As noted in Rosendale I, enforcement of such regulations and their interpretation is discretionary. New York provides an adequate remedy for review of such discretion for possible abuse, not sought in this case.

It is implausible, to say the least, that a community would issue a building permit or Certificate of Occupancy for a restaurant simply to spite the Plaintiff, and no evidence

supporting that inference has been offered.[6]

Plaintiff asserts that in August 2003, he had a meeting and one-on-one discussion with Defendant Donald J. Smith, the Zoning Code Enforcement Officer of the Town. Plaintiff stated: "While I do not recall his exact words, his statement was to the effect that over the years I had stuck my nose 'into too many places where it didn't belong;' I was 'unpopular' with certain members of the town administration, and that as a consequence, in retaliation, he would not act on my allegations." That Smith would make such a convenient statement to a known litigant strains plausibility. There is no evidence that a majority of the Town Board, or, for that matter, any of its members, before or after Smith's brief tenure, shared such a motivation, or permitted Smith to ignore all the claimed violations, for the unlawful purpose claimed.

By Supplemental Objections to the Report and Recommendation of the Magistrate Judge, submitted under date of February 28, 2006, Mr. Rosendale objects to the oral refusal of the Magistrate Judge to allow a deposition of the Town's attorney of record in this lawsuit who had said that he signed the answers to interrogatories in lieu of Town officials because the officials said they would not sign "because of my repute for bringing lawsuits." Although he failed to appeal that ruling, he now argues that he was entitled to discover which Town officials refused to sign and "which lawsuits the town officials meant, their opinions and concerns about the lawsuits, whether the Town's actions against me were not motivated by rancor."

---

[6]There is no showing that the bar and restaurant Certificate of Occupancy is illegal.

The argument that such information would be helpful defies logic.  An admission that a

public official declined to sign the interrogatories because he or she feared being sued, if

obtained at deposition, would not prove past retaliation in connection with code enforcement.

As

a practical matter, no official who, in fact, was so evil as to be "motivated by rancor" is likely to

so testify.  There has been extensive discovery in the case, and the federal rules do not allow a

litigant to file a case in order to get discovery to find out if he has a case; such fishing

expeditions are not countenanced.  See *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138

(2d Cir. 1994), which holds:

> [appellant's] argument is that it should be allowed to find out if it has a claim,
> rather than that it has a claim for which it needs additional discovery.  Such
> divagation is decidedly not the object of the discovery procedures outlined in
> the Federal Rules of Civil Procedure.  See *Gray v. Town of Darien*, 927 F.2d
> 69, 74 (2d Cir.)  ("In a summary judgment context, an 'opposing party's mere
> hope that further evidence may develop prior to trial is an insufficient basis upon
> which to justify the denial of [a summary judgment] motion'") (quoting
> *Contemporary Mission, Inc. v United States Postal Serv.*, 648 F.2d 97, 107 (2d
> Cir. 1981)), cert. denied, 112 S. Ct. 170 (1991); *Capital Imaging Assoc. v.
> Mohawk Valley Medical Assoc.*, 725 F. Supp. 669, 680 (N.D.N.Y. 1989).

See also *Waksman v. Cohen* 1998, U.S. Dist. Lexis 15587 (Knapp, J).


It is contradictory, to say the least, and implausible to argue on one hand that the locals

were so timid and so terrified of Plaintiff's supposed litigious propensities that they declined

to verify the interrogatories, and to argue on the other hand that they were so emboldened with

their discretionary Home Rule powers as to undermine their own town wide land use regulations,

just to get even for Plaintiff's exercise of his First Amendment rights.

As noted earlier, adequacy of the First Amended Complaint in this case is no longer the issue, if indeed it ever was. A motion for summary judgment under Rule 56 goes beyond the face of the Complaint to determine if there are genuine disputed issues of material facts. A Rule 56 motion does not adjudicate disputed material facts, it merely searches them out. If no reasonable juror could decide a disputed fact in favor of the non-moving party, based on the affidavits, depositions and other paper submitted, summary judgment may be granted. It also may be granted where the non-moving party is precluded from prevailing by law, including the law of issue and claim preclusion and the law of the case.

To the extent the case of *Gagliardi v. Village of Pawling,* 18 F.3d 195 (2d Cir. 1991), relied on by Plaintiff because he "cut and pasted [the Complaint] word for word," can be read to be inconsistent with the decision in Rosendale I, Rosendale I is law of the case and controlling as between the parties. The *Gagliardi* case itself is readily distinguishable on its facts. In *Gagliardi*, the Complaint was dismissed by the district court for failure to state a claim under Rule 12(b)(6). Dismissal of the due process and equal protection claims in that case was affirmed, as it was in Rosendale I. The Court of Appeals in *Gagliardi* held merely that the First Amendment retaliation claim was actionable under the most unusual facts alleged if supported by evidence. It was alleged that an industrial user adjacent to *Gagliardi's* residence entered into an agreement with the Village in which it promised not to expand its residence operations to the North in the future (towards Plaintiff) and that machinery installed in the future would be located on the Southern portion of the property. Thereafter, it breached the agreement, violated the zoning code and created excessive noise and vibration on the property. The industry also had

obtained a building permit without the required approval of the Planning Board or the Zoning

Board of Appeals.  The New York Supreme Court had annulled the building permit and site plan

approval granted to the industry, which then failed to comply with the judgment of the Supreme

Court that certain unauthorized silos be removed.  While conceding that the municipal

Defendants had "broad discretion in determining whether to grant or deny the building permit

site plan and variances," the Court of Appeals concluded that the Gagliardi's were entitled to

litigate a First Amendment retaliation claim under the totality of the unusual circumstances

present in that case.


In this case Plaintiff's position is that the Town allowed the rod and gun club to violate

provisions (many of them vague and unenforceable) in its Special Use Permit; permitted Nextel

to obtain a building permit for a use benefitting the general public, sixteen days after its variance

ran out; permitted Nextel's consultant to decline to screen the antenna from the direction of

Rosendale's property; allowed a restaurant to open and operate on a nearby golf course; and

allowed Murphy's tenant to do auto body repair,[7] all to spite Rosendale because they were

offended by his First Amendment protected utterances.  To state this proposition confirms its

implausibility.  Law enforcement is discretionary.  It is impossible for any sheriff to catch all the

malefactors in his Bailiwick, and indeed many don't even try.  They are not required to.

Property owners complaining of laxity in code enforcement have their remedy on election day,

---

[7]The record shows that the Town did stop Murphy's tenant from repairing cars other than
his own.

as indeed do the property owners offended by unduly rigid code enforcement.[8]  Also, as noted, there is a speedy remedy in the state courts under Article 78 to compel official performance of a lawful duty.

Where a factual claim or a claim of evil motive is clearly implausible, as in this case, summary judgment is appropriate on the theory that no reasonable juror could find in favor of the non-moving party.  This principle is supported in *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 558 (1986) and in many recent cases in our Circuit, including *Jeffreys v. The City of New York,* 475 U.S. 549, 551 (2d Cir. 2005) in which the Court held:

> The question presented is whether the District Court erred in granting defendants'
> motion for summary judgment on the basis that Jeffrey's testimony - - which was
> largely unsubstantiated by any other direct evidence - - was "so replete with
> inconsistencies and improbabilities" that no reasonable juror would undertake
> the suspension of disbelief necessary to credit the allegations made in his
> complaint.  *See Jeffreys, 275 F. Supp. 2d at 475.*

> Notwithstanding the general rule that district courts may not weigh evidence or
> assess the credibility of witnesses at the summary judgment stage, we hold that,
> in the circumstances presented - - where Jeffreys relied almost exclusively on his
> own testimony - - the District Court did not err in concluding, in the course of
> determining whether there were any "genuine issues of material fact," that no
> reasonable jury could have credited Jeffrey's testimony.

Here, to prove motive and causation, Mr. Rosendale relies solely on his own testimony.

## Conclusion

As supplemented and modified herein the Report and Recommendation of the Magistrate

---

[8]Lieutenant Governor Frank C. Moore of New York (1896-1978), leading supporter of the extension of Home Rule powers to municipalities in the state, said that "Home Rule is the right to be misgoverned by people of our choice," not by a non-elected federal judiciary which might do a far better job of administering the affairs of the Town of Amenia.

SO ORDERED.

Dated: White Plains, New York
       March 13, 2006

_Charles L. Brieant_
Charles L. Brieant, U.S.D.J.